**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MAX ENGERT, JACK PURCHASE,** | § | |
| **And RONALD ATKINSON on behalf** | § | |
| **of themselves and all others similarly** | § | |
| **situated,** | § | |
| | § | **CIVIL ACTION NO: 1:19-cv-183** |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **QUINCY BIOSCIENCE, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

1.     Plaintiff Max Engert, Jack Purchase, and Ronald Atkinson ("Plaintiffs") bring this case as a class action against Defendant Quincy Bioscience, LLC pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated. Defendant manufactures, markets, sells, and distributes the supplement Prevagen – a dietary supplemental made with the protein apoaequorin. Prevagen is marketed and advertised to do one thing – "improve memory." In Defendant's online, print, television, and on every Prevagen product package, Defendant falsely tells consumers that Prevagen will "improve memory within 90 days." Defendant also falsely claims that Prevagen supports a "sharper mind," "clearer thinking," and "healthy brain function." These advertisements are false and misleading and designed to dupe consumers into purchasing a supplement that has no effect whatsoever on the brain.

2.     Through the conduct described in this Complaint, Defendant has violated Texas and federal law. Plaintiffs bring this case as class action pursuant to the Texas Deceptive Trade Practices Act ("DTPA"), the Texas Business and Commerce Code § 17.41 *et seq.*, for breach of

1

express and implied warranties, and under the Magnuson-Moss Warranty Act.  Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek to recover their economic losses, treble damages, exemplary damages, attorney's fees, costs and interests, and all other relief to which they and the Class Members are entitled.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act found in 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in where there are in excess of 100 class members and some of the class members are citizens of a state different than that of Defendant.

4.      Defendant is subject to personal jurisdiction in Texas because it does business in Texas, advertises in Texas, markets to Texas consumers, and the misrepresentations forming the basis of this lawsuit were made in Texas.

5.      Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise the claims in this Complaint took place in this district.

## PARTIES

6.      Plaintiff Max Engert is a resident of Travis County, Texas.  During the relevant time period, Plaintiff Engert acquired and consumed Prevagen.

7.      Plaintiff Jack Purchase is a resident of Parker County, Texas.  During the relevant time period, Plaintiff Purchase acquired and consumed Prevagen.

8.      Plaintiff Ronald Atkinson is a resident of Walker County, Texas.  During the relevant time period, Plaintiff Atkinson acquired and consumed Prevagen.

9. Defendant Quincy Bioscience, LLC is a foreign limited liability company organized under the law of Wisconsin. Defendant may be served with process by serving its registered agent, Keith A. Thomsen, at 726 Heartland Trail, Suite 300, Madison, WI 53717.

10. The "Texas Class" consists of all citizens of Texas who, within the last four years prior to the filing of this Complaint, purchased Defendant's product Prevagen, in any amount. Excluded from this Class are Defendant's officers, directors and employees, and those who purchased Prevagen for the purpose of resale.

11. The "National Class" consists of all citizens of the United States who, within the last four years prior to the filing of this Complaint, purchased Defendant's product Prevagen, in any amount. Excluded from this Class are Defendant's officers, directors and employees, and those who purchased Prevagen for the purpose of resale.

## COVERAGE

12. At all material times, Defendant has been a "person" as defined under the Texas Business and Commerce Code. Tex. Bus & Com. Code §§ 17.45(3), 17.50(a)(1);

13. At all material times, Defendant has been a seller as defined under the Texas Business and Commerce Code. Tex. Bus. & Com. Code § 2.103(a)(4).

14. At all material times, Defendant has been the manufacturer of Prevagen, which was sold in Texas and across the United States.

15. At all material times, Defendant has been the warrantor of Prevagen under the Magnuson-Moss Warranty Act. 15 U.S.C. § 2301(5).

16. At all material times, Prevagen has been a good and consumer product within the Texas Business and Commerce Code and the Magnuson-Moss Warranty Act. Tex. Bus. & Com. Code § 2.105(a); 15 U.S.C. § 2301(1).

## FACTS

### INTRODUCTION

17.     Since 2007, Defendant has manufactured, marketed, distributed, and sold Prevagen. Prevagen is available in regular strength (10 mg. apoaeqorin), extra strength (20 mg. apoaequorin), and mixed berry chewable forms (10 mg. apoaequorin).  Through an extensive, widespread, and uniform nationwide marketing campaign, on the on the front of each Prevagen product package, and on the bottle of Prevagen itself, where it cannot be missed by any consumer, Defendant misrepresents that Prevagen (1) "improves memory," (2) that it has been "clinically tested" to "improve memory within 90 days," (3) that it "supports: healthy brain function, sharper mind, and clearer thinking." Prevagen is marketed as a supplement to have one purpose:  to improve age-related memory loss.  However, Defendant's statements are false and misleading.  Defendant has deceived consumers in Texas and throughout the US to purchase Prevagen when it has no effect on the brain and provides no benefit to the body, let alone, improve memory.

### SALE OF PREVAGEN

18.     Prevagen is sold in nearly every major retail store in the US, as well as being sold on the internet.  A 30 count bottle of Prevagen retails for approximately $28.00 - $60.00.  To sell Prevagen, Defendant has told consumers that the supplement will improve their memories within 90 days and improve the health of their brains.  These false and deceptive statements have harmed consumers, especially elderly consumers, across the country.  For example, the American Association of Retired Persons has recently spoken out against Defendant and has stated that Defendant is "deceiving millions of aging Americans" with claims that the supplement can treat age-related memory loss.  (*See* https://www.aarp.org/politics-society/advocacy/info-2018/overturn-prevagen-decision-fd.html, last visited February 21, 2019).  Defendant's false

4

statements are pervasive.  Defendant's website states in bold that "Prevagen Improves Memory." The website further claims that it "is a dietary supplement that has been clinically shown to help" with "memory problems associated with aging."

19.     Defendant's online and television advertisements further this deception by claiming that within 90 days, Prevagen will improve one's memory.



20.     Defendant then claims that Prevagen will promote a "healthier brain."

21.     Even the packaging material makes these false claims.  The following are screenshots of each of the packages for Prevagen:



22.    Each package states the same: Prevagen "improves memory," is "clinically tested," and "supports: healthy brain function, sharper mind, and clearer thinking."

23.    These falsehoods are continued on the side and back of the package.



24.     At the top of the package, there is a picture of a brain that states "SUPPORTS HEALTHY BRAIN FUNCTION."



25.     The misrepresentations are then repeated on the bottle, "Clinically Tested" and "Improves Memory."



26.     Despite the evidence that Prevagen does not and cannot improve memory, provide a "healthier" brain, or support brain function, each and every advertisement and product package repeatedly emphasizes that Prevagen is "clinically tested" to "improve[] memory" and will do so within "90 days."  Each and every consumer who purchases Prevagen is exposed to the deceptive brain function and memory representations.

7

## PREVAGEN DOES NOT IMPROVE MEMORY AND CANNOT AFFECT THE BRAIN

27.     Prevagen does not work as represented and Defendant is repeatedly making false statements about its ability to improve memory and affect the brain.  Indeed, Prevagen does not improve memory or support healthy brain function, sharper mind, or clearer thinking. Prevagen's only active ingredient is apoaequorin, which is to be orally ingested at a daily dose of 10 or 20 mg. Apoaequorin is a protein, which is ingested and undergoes digestion where it is broken down into its amino acid constituent parts. As a result of being digested into amino acids, by the time that it reaches the bloodstream, Prevagen is no different than any other protein, such as those found in fish, turkey, bologna, etc. (none of which improve memory or brain function).

28.     Additionally, the daily dose of Prevagen only provides a trivial amount of amino acids compared to the substantial amount of amino acids supplied by other proteins in our daily diets.  Further, even if Prevagen were to somehow enter the bloodstream as apoaequorin (and not in its digested form as amino acids), it does not and cannot pass through the blood-brain barrier, and thus it can never enter the brain. Given that it cannot enter the brain, it can have no effect on brain function, including memory.

29.     The digestion and absorption of proteins, including apoaequorin, is well established. Apoaequorin, like all other proteins, is fully digested before it hits the bloodstream. Digestion begins in the stomach and continues in the intestine with a series of enzymes including trypsin, elastase, chymotrypsins and carboxypedidases. These enzymes break down proteins, including apoaequorin, into amino acids and possibly some small peptides for absorption into the intestine.     Thus, before apoaequorin even enters the intestine it has been reduced down to amino acids and possibly some small peptides.  Afterwards, these products go through additional digestion in the intestinal cells and are even further reduced as a result.

30.     By the time it enters the blood, apoaequorin is broken down and indistinguishable from the amino acids derived from other dietary proteins. These common dietary proteins, and the amino acids they provide, are used by the body for any number of purposes, including the synthesis of muscle, tissues, and enzymes.

31.     Once in the bloodstream, the body does not single out the amino acids from apoaequorin, as opposed to vast amount of other amino acids from the daily ingestion of proteins, and send them to the brain. Rather, the body uses all amino acids, including those derived from apoaequorin and all other dietary proteins, as needed.  Given that humans also synthesize a lot of amino acids from their daily diet, the trivial amount derived from ingesting Prevagen would be substantially less than the total dietary protein ingested daily. Thus, taking Prevagen has a trivial, if any effect, on the body. Clearly, the claim that Prevagen promotes a healthier brain and improves memory is false.

32.     In addition to being trivial in amount and not reaching the blood, if apoaequorin somehow were not fully digested, it would not be able to pass the blood-brain barrier. This means that Prevagen in no way can help memory or improve brain function.  The blood-brain barrier keeps certain substances, including proteins, out of the brain.  Apoequorin is a large, water soluble protein that cannot possibly pass the barrier into the brain.

33.     Thus, Prevagen is digested and completely destroyed during the absorption process and cannot affect memory, lead to a healthier brain, support clearer thinking, or any of the other claims made by Defendant.

**NO RELIABLE SCIENTIFIC BASIS TO SUPPORT DEFENDANT'S CLAIMS**

34.     Defendant claims that Prevagen has been "clinically tested" to improve memory within 90 days.  This statement is false.  Any reasonable consumer would believe that "clinically

tested" means that there exists a scientific basis to support the allegation with competent evidence. However, there is no competent and reliable scientific evidence to support Defendant's claims.

35.     Further, there has never been an independent, randomized controlled clinical trial subjected to a peer review process that supports Defendant's claims.   Indeed, there is no independent, randomized controlled clinical trial for Prevagen.

36.     Worse, there is no basis in science for the representations made by Defendant. There is no reliable support for the claim that Prevagen improves memory, improves brain health, or any of the other statements made by Defendant.  Defendant conducted a randomized, double-blind, placebo-controlled study that contradicted the representations Defendant made to consumers.  Contrary to Defendant's statements that Prevagent has been clinically shown to improve memory and brain health, Defendant's study showed no statistically significant improvement in the memory and cognition of participants taking Prevagen over participants taking the placebo.  The study did not show any scientific basis for the representations that Prevagen improves memory.

**DEFENDANT REPEATEDLY MADE FALSE REPRESENTATIONS**

37.     As noted above, on its website, through its commercials, on the packing, and on the bottle itself, Defendant made – and still makes - numerous false statements regarding Prevagen that were designed to dupe unsuspecting consumers into purchasing the product.

38.     Defendant stated that Prevagen "improves memory."  This statement is false, deceptive, and misleading.

39.     Defendant stated that Prevagen was "clinically tested" to "improve memory within 90 days." This statement is false, deceptive, and misleading.

40.     Defendant stated that Prevagen "supports: healthy brain function, sharper mind, and clearer thinking."  This statement is false, deceptive, and misleading.

41.     Defendant stated that Prevagen "supports healthy brain function."  This statement is false, deceptive, and misleading.

42.     Defendant stated that Prevagen leads to a "healthier brain."  This statement is false, deceptive, and misleading.

## CALIFORNIA LITIGATION

43.     This case is not the first case to challenge Defendant's conduct.  In 2015, a California resident brought similar allegations against Defendant claiming that it was falsely advertising Prevagen as a memory improving supplement. (See Racies v. Quincy Bioscience, LL, No. Civ. 15-292-HSG (N.D. Cal. 2015).)  In denying the Defendant's Motion to Dismiss, the Court stated: "If Plaintiff successfully proves that the apoaequorin in the Product is destroyed by the human digestive system or is of such a trivial amount that it cannot biologically affect memory or support brain function, he will be able to affirmatively prove the falsity of Defendant's Product claims." (*See id*. at Dkt. 34 page 6.)

44.     The *Racies* Court later certified the case as a class action under Rule 23 for California residents.

## MISREPRESENTATIONS TO THE PLAINTIFFS

45.     Plaintiff Engert took Prevagen for approximately two years from April 2014 to May 2016. Plaintiff Engert purchased Prevagen after he was exposed to Defendant's false brain function and memory misrepresentations issued by Defendant on television and by reading the Prevagen package and label on the bottle claiming that Prevagen will improve memory as stated in this

Complaint.  His purchases were made at CVS in Lakeway, Texas and he spent $40.99 to $59.99 per bottle for both regular and extra strength Prevagen. The Prevagen he took did not and could not improve memory or support healthy brain function as represented.  The Prevagen he took did not provide any of the health benefits that Defendant stated.  Had Plaintiff Engert known the truth about Defendant's misrepresentations, he would not have purchased Prevagen.  Plaintiff Engert was injured because he was induced to purchase a product and lose money but for Defendant's unlawful representations and deceitful statements.  He also did not receive the benefit that he was told and for which he purchased – a supplement that will improve his memory and the health of his brain.

46.     Plaintiff Purchase took Prevagen for three months from September 2017 to December 2017. Plaintiff Purchase bought Prevagen after he was exposed to Defendant's false brain function and memory misrepresentations issued by Defendant on television and by reading the Prevagen package and label on the bottle claiming that Prevagen will improve memory as stated in this Complaint.  His purchases were made at CVS near his home in Weathorford, Texas and he spent $40.99 per bottle for Prevagen. The Prevagen he took did not and could not improve memory or support healthy brain function as represented.  The Prevagen he took did not provide any of the health benefits that Defendant stated.  Had Plaintiff Purchase known the truth about Defendant's misrepresentations, he would not have purchased Prevagen.  Plaintiff Purchase was injured because he was induced to purchase a product and lose money but for Defendant's unlawful representations and deceitful statements.  He also did not receive the benefit that he was told and for which he purchased – a supplement that will improve his memory and the health of his brain.

47.     Plaintiff Atkinson took Prevagen for approximately six months from January 2018 to July 2018. Plaintiff Atkinson purchased Prevagen after he was exposed to Defendant's false

brain function and memory misrepresentations issued by Defendant on television and by reading the Prevagen package and label on the bottle claiming that Prevagen will improve memory as stated in this Complaint. His purchases were made at HEB in Huntsville, Texas and online through Amazon. He spent $23.99 to $35.98 per bottle for both regular and extra strength Prevagen. The Prevagen he took did not and could not improve memory or support healthy brain function as represented. The Prevagen he took did not provide any of the health benefits that Defendant stated. Had Plaintiff Atkinson known the truth about Defendant's misrepresentations, he would not have purchased Prevagen. Plaintiff Atkinson was injured because he was induced to purchase a product and lose money but for Defendant's unlawful representations and deceitful statements. He also did not receive the benefit that he was told and for which he purchased – a supplement that will improve his memory and the health of his brain.

## COUNT I

Violation of Tex. Bus. & Com. Code §§ 17.41 et. seq
Texas Deceptive Trade Practices Act
(On Behalf of Plaintiffs and the Texas Class)

48.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

49.     Plaintiffs bring this claim on behalf of themselves and on behalf of the Texas Class.

50.     This cause of action is brought pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act, as codified in the Texas Business & Commerce Code §§ 17.41 *et. seq.* ("DTPA").

51.     Plaintiffs are consumers as defined by the Tex. Bus. & Com. Code § 17.45(4).

52.     Plaintiffs sought or acquired by purchase Prevagen, which is a "good" within the meaning of the DTPA. *See* Tex. Bus. & Com. Code § 17.45(1).

53.     Plaintiffs sought or acquired Prevagen after Defendant engaged in the illegal conduct by unlawfully making the false, misleading, and deceptive acts as set forth above.

54.     Defendant's statements that Prevagen "improve[s] memory," improves "brain functioning," is "clinically tested," and "supports: healthy brain function, sharper mind, and clearer thinking" violate Sections 17.46(b)(2), 17.46(b)(5), 17.46(b)(7), 17.46(b)(9), and 17.46(b)(24) of the Texas Business and Commerce Code.

55.     Defendant's illegal actions include, but are not limited to the following:

   a. Defendant represented that Prevagen was of a particular standard, quality, and grade that it is not.  Namely, that Prevagen can improve memory and brain health when it cannot.

   b. Defendant represented that Prevagen has sponsorship, approval, characteristics, and benefits that it does not have. Defendant stated that Prevagen can improve memory and brain health when it cannot.  Defendant also stated that Prevagen was clinically tested to improve memory when that statement was not true.

   c. Defendant failed to disclose information about Prevagen that was known at the time of the transaction and which was intended to induce Plaintiffs to purchase Prevagen which they would not have purchased had the information been disclosed.  Indeed, Defendant knew that Prevagen does not improve memory or brain health and failed to disclose that information to the Plaintiffs.

   d. Breaching express and implied warranties, as further stated below.

56.     Defendant's false, misleading, and deceptive acts induced Plaintiffs and the Class Members to purchase Prevagen.

14

57.     But for Defendant engaging in the false, misleading, and deceptive acts, as identified in this Complaint, Plaintiffs and the Class Members would not have purchased Prevagen and would not have suffered economic harm.  As a result of Defendant's illegal conduct, Plaintiffs and the Class Members have suffered injury/economic loss and are entitled to reimbursement of the amount they spent for Prevagen.  Alternatively, Plaintiffs and Class Members seek the difference between the price they paid for Prevagen and the market price of generic protein pills of similar type and quantity.

58.      Plaintiffs and Class Members also seek treble their economic losses because Defendants acted intentionally.

59.     Plaintiffs and Class Members also seek reasonable attorney's fees, expenses, and court costs.

60.     Notice was provided to Defendant and Defendant failed to cure the violations it committed.

## COUNT II

Violation of Tex. Bus. & Com. Code §§ 2.313, 2.714, 2.715
Breach of Express Warranty
(On Behalf of Plaintiffs and the Texas Class)

61.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

62.     Plaintiffs bring this claim on behalf of themselves and on behalf of the Texas Class.

63.     This cause of action is brought against Defendant pursuant to Texas Business & Commerce Code § 2.313 for breaching express warranties about Prevagen. Section 2.313 states as follows:

(a) Express warranties by the seller are created as follows:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

64.     Here, Defendant has breached multiple express warranties.  As stated in this Complaint, Defendant claimed that Prevagen "improve[s] memory," improves "brain functioning," is "clinically tested," and "supports: healthy brain function, sharper mind, and clearer thinking."  Prevagen does none of those things.  Prevagen does not conform to the promises made by Defendant and does not conform to the description made by Defendant.

65.     The representations made by Defendant were the basis and reason why Plaintiff and the Texas Class purchased Prevagen.

66.     Notice was provided to Defendant and Defendant failed to cure the breaches it committed.

67.     The Plaintiffs and Texas Class have suffered economic harm as a result.  As a result of Defendant's illegal conduct, Plaintiffs and the Class Members have suffered injury/economic loss and are entitled to reimbursement of the amount they spent for Prevagen.  Alternatively, Plaintiffs and Class Members seek the difference between the price they paid for Prevagen and the market price of generic protein pills of similar type and quantity.

68.     Plaintiffs and Class Members also seek reasonable attorney's fees, expenses, and court costs.

## **COUNT III**

Violation of Tex. Bus. & Com. Code §§ 2.313, 2.714, 2.715

16

Breach of Implied Warranty of Merchantability
(On Behalf of Plaintiffs and the Texas Class)

69.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

70.     Plaintiffs bring this claim on behalf of themselves and on behalf of the Texas Class.

71.     This cause of action is brought against Defendant pursuant to Texas Business & Commerce Code § 2.314 for breaching implied warranties about Prevagen. Section 2.314 states as follows:

  a. Unless excluded or modified (Section 2.316), a warranty BUSINESS AND COMMERCE CODE Statute text rendered on: 1/1/2018 - 31 - that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

  b. Goods to be merchantable must be at least such as (1) pass without objection in the trade under the contract description; and (2) in the case of fungible goods, are of fair average quality within the description; and (3) are fit for the ordinary purposes for which such goods are used; and (4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (5) are adequately contained, packaged, and labeled as the agreement may require; and **(6) conform to the promises or affirmations of fact made on the container or label if any** (emphasis added).

  c. Unless excluded or modified (Section 2.316) other implied warranties may arise from course of dealing or usage of trade.

72.     Here, the packing for Prevagen states that it "improves memory," improves "brain functioning," is "clinically tested," and "supports: healthy brain function, sharper mind, and clearer thinking."  Prevagen does none of those things.

73.     The label on the bottle of Prevagen states that it "improves memory," that it is "clinically tested," and "improve[s]" "cognitive function."

74.     Prevagen does not conform to the promises and affirmations on its container and label.

75.     Notice was provided to Defendant and Defendant failed to cure the breaches it committed.

76.     The Plaintiffs and Texas Class have suffered economic harm as a result.  As a result of Defendant's illegal conduct, Plaintiffs and the Class Members have suffered injury/economic loss and are entitled to reimbursement of the amount they spent for Prevagen.  Alternatively, Plaintiffs and Class Members seek the difference between the price they paid for Prevagen and the market price of generic protein pills of similar type and quantity.

77.     Plaintiffs and Class Members also seek reasonable attorney's fees, expenses, and court costs.

## COUNT IV

Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312
(On Behalf of Plaintiffs, the Texas Class, and National Class)

78.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

79.     Plaintiffs bring this claim on behalf of themselves, on behalf of the Texas Class, and on behalf of the National Class

80.     This cause of action is brought against Defendant pursuant to 15 U.S.C. § 2310(d)(1) for breaching implied warranties about Prevagen. Section 2310(d)(1) states as follows:

    a.  a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.

81.     Here, the packing for Prevagen states that it "improves memory," improves "brain functioning," is "clinically tested," and "supports: healthy brain function, sharper mind, and clearer thinking."  Prevagen does none of those things.

82.     The label on the bottle of Prevagen states that it "improves memory," that it is "clinically tested," and "improve[s]" "cognitive function."

83.     Prevagen does not conform to the promises and affirmations on its container and label.

84.     The Plaintiffs, Texas Class, and National Class have suffered economic harm as a result.  As a result of Defendant's illegal conduct, Plaintiffs and the Class Members have suffered injury/economic loss and are entitled to reimbursement of the amount they spent for Prevagen. Alternatively, Plaintiffs and Class Members seek the difference between the price they paid for Prevagen and the market price of generic protein pills of similar type and quantity.

85.     Plaintiffs and Class Members also seek reasonable attorney's fees, expenses, and court costs.

## CLASS ALLEGATIONS

86.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of themselves and on behalf of the following classes:

**TEXAS CLASS**

**All residents of Texas who, within the last four years prior to the filing of this Complaint, purchased Defendant's product Prevagen, in any amount. Excluded from this Class are Defendant's officers, directors and employees, and those who purchased Prevagen for the purpose of resale.**

**NATIONAL CLASS**

**All residents of the United States who, within the last four years prior to the filing of this Complaint, purchased Defendant's product Prevagen, in any amount. Excluded from this Class are Defendant's officers, directors and employees, and those who purchased Prevagen for the purpose of resale.**

87.     Counts I-III are being pursued by the Plaintiffs and Texas Class only.  Count IV is being pursued by the Plaintiffs, Texas Class, and National Class.

88.     **Numerosity**. The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Plaintiffs are informed and believe that the proposed Classes contain thousands of purchasers of Prevagen who have been harmed by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to the Plaintiffs but is believed to be well in excess of 100.

89.     **Existence and Predominance of Common Questions of Law and Fact**: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant's representations discussed above are false, misleading, or objectively reasonably likely to deceive consumers;

(b)     whether Prevagen has the ability to affect the brain and improve memory;

(c)     whether Prevagen conforms to the representations and promises made on its package and label; and

(d)      whether Defendant's knew that Prevagen does not improve memory or brain health.

90.     **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Classes because all Class Members were injured through the uniform misconduct described above and were all subject to Defendant's deceptive brain function and memory representations that were written on each and every package and bottle of Prevagen. Plaintiffs are also advancing the same claims and legal theories on behalf of the Classes.

91.     **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes.

92.     **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class Members could afford such individualized litigation, it would place a tremendous strain on judicial economy. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

93.     Indeed, by concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted.  Additionally, class treatment in this matter will provide for judicial consistency.  Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication.  The identity of members of the Class Members is readily identifiable from Defendant's records.

94.     This type of case is well-suited for class action treatment because: (1) Defendant's practices, policies, and/or marketing of Prevagen were uniform; (2) Prevagen is marketed to do one thing – improve memory; (3) the necessary records to prove Defendant's false and deceptive acts are in the possession of Defendant.  Ultimately, a class action is a superior form to resolve the claims detailed herein because of the common nucleus of operative facts centered on Defendant's misrepresentations about Prevagen.

95.     Unless a class is certified, Defendant will retain the money it wrongfully received as a result of its illegal conduct.  Defendant has acted and refused to act on grounds generally applicable to all Class Members, making a class action a superior means to resolve this case.

## JURY DEMAND

96.     Plaintiffs hereby demand trial by jury on all issues.

## PRAYER

97.     For these reasons, Plaintiffs pray for:

   a.   An order certifying the Classes under Rule 23;

   b.   A judgment against Defendant awarding Plaintiffs and the Class Members their economic losses, treble damages, and all statutory penalties;

   c.   An order awarding attorneys' fees, costs, and expenses;

d.   Pre- and post-judgment interest at the highest applicable rates; and

e.   Such other and further relief as may be necessary and appropriate.

KENNEDY HODGES, L.L.P.

By:   /s/ Don J. Foty
     Don J. Foty
     dfoty@kennedyhodges.com
     Fed. ID NO. 711522
     State Bar No. 24050022
     4409 Montrose Blvd., Suite 200
     Houston, TX 77006
     Telephone: (713) 523-0001
     Facsimile: (713) 523-1116

ATTORNEY FOR PLAINTIFFS AND CLASS MEMBERS