# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | |
|---|---|
| MAX ENGERAT, JACK PURCHASE, AND RONALD ATKINSON, ON BEHALF OF THEMSELVES AND ALL OTHER SIMILARLY SITUATED, *Plaintiffs* <br><br> v. <br><br> QUINCY BIOSCIENCE, LLC <br> *Defendant* | Case No. 1:19-CV-183-LY |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before this Court are Defendant Quincy Bioscience, LLC's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, filed on June 21, 2019 (Dkt. No. 22); Plaintiffs' Response, filed on July 12, 2019 (Dkt. No. 24); and Defendant Quincy Bioscience, LLC's Reply, filed on July 26, 2019 (Dkt. No. 27). On July 24, 2019, the District Court referred the above motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I. BACKGROUND

Defendant Quincy Bioscience, LLC ("Defendant"), a foreign limited liability company organized under the laws of Wisconsin, manufactures, markets, sells, and distributes Prevagen, a dietary supplement made with the protein apoaequorin. Defendant's advertising and labeling state that Prevagen will "improve memory within 90 days" and support a "sharper mind," "clearer thinking," and "healthy brain function." Dkt. No. 14 at ¶ 1.

Plaintiffs Max Engert, Jack Purchase, and Ronald Atkinson ("Plaintiffs") are Texas residents who acquired and consumed Prevagen. Plaintiffs allege that Defendant's advertisements regarding Prevagen "are false and misleading and designed to dupe consumers into purchasing a supplement that has no effect whatsoever on the brain." *Id.* Plaintiffs allege that Defendant made and continues to make numerous false statements regarding Prevagen "on its website, through its commercials, on the packing, and on the bottle itself." *Id.* at ¶ 37. Plaintiffs allege that Prevagen does not work as represented and contend that Defendant has repeatedly made, and continues to make, false statements about its ability to improve memory and affect the brain.

Plaintiffs contend that Prevagen does not improve memory or support healthy brain function, a sharper mind, or clearer thinking. Plaintiff alleges that Prevagen's only active ingredient is apoaequorin, a protein that when ingested undergoes digestion, where it is broken down into its amino acid constituent parts. "As a result of being digested into amino acids, by the time that it reaches the bloodstream, Prevagen is no different than any other protein, such as those found in fish, turkey, bologna, etc. (none of which improve memory or brain function)." *Id.* at ¶ 27. Plaintiffs allege that the daily dose of Prevagen provides only a trivial amount of amino acids compared to the substantial amount of amino acids supplied by other proteins in daily diets.

Plaintiffs further allege that even if Prevagen were to somehow enter the bloodstream as apoaequorin (and not in its digested form as amino acids), it does not and cannot pass through the blood-brain barrier, and thus it can never enter the brain. "Given that it cannot enter the brain, it can have no effect on brain function, including memory." *Id.* at ¶ 28. Plaintiffs also allege that Defendant's claim that Prevagen has been "clinically tested" to improve memory within 90 days is false. *Id.* at ¶ 34. Plaintiffs contend that there has never been an independent, randomized, controlled clinical trial subjected to a peer review process that supports Defendant's claims.

Plaintiffs assert that "there is no scientific basis for the representations by Defendant that Prevagen improves memory." *Id.* at ¶ 36. Plaintiffs also allege that consumers in Texas, particularly the elderly, have been significantly harmed by Defendant's false and misleading advertisements.

On February 25, 2019, Plaintiffs filed this class action lawsuit against Defendant, on behalf of themselves and all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, alleging claims under the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.41 *et seq.*; breach of express and implied warranties; and a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-12.[1] Plaintiffs bring this action on behalf of the "Texas Class," consisting "of all citizens of Texas who, within the last four years prior to the filing of this Complaint, purchased Defendant's product Prevagen," as well as the "National Class," consisting "of all citizens of the United States who, within the last four years prior to the filing of this Complaint, purchased Defendant's product Prevagen." *Id.* at ¶¶ 10-11. Plaintiffs seek to recover their economic losses, treble damages, exemplary damages, attorney's fees, costs and interests, and all other relief to which they and the Class Members are entitled.

On June 21, 2019, Defendant filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs fail to state a claim because the clinical trial on which Defendant premised its advertisements for Prevagen conclusively demonstrates that Defendant's marketing statements about Prevagen were both truthful and fully substantiated. Alternatively, Defendant argues that all of Plaintiffs' claims fail to meet the pleading requirements of Federal Rule of Civil Procedure 9(b).

---

[1] This is not the first lawsuit filed against Defendant alleging that its advertising regarding Prevagen's memory benefits are false and misleading. *See TC v. Quincy Bioscience Holding Co.*, No. 17-3745, 753 F. App'x 87 (2d Cir. 2019) (pending FTC and State of New York lawsuit alleging that Defendant's marketing campaign for Prevagen is deceptive and violates the FTC Act); *Racies v. Quincy Bioscience, LLC*, 4:15-CV-292-HSG (N.D. Ca. May 19, 2015) (class action lawsuit—set for trial on Jan. 6, 2020—alleging that Defendant's statements regarding Prevagen violated California's consumer protection laws).

3

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Rule 9(b) provides that, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Fifth Circuit precedent interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001).

### III. ANALYSIS

**A. Extrinsic Evidence**

Defendant first argues that all of Plaintiffs' claims asserted in this case fail because Defendant's clinical drug trial ("the Study"), on which Defendant allegedly premised its advertisements for Prevagen, "conclusively demonstrates that Quincy's marketing statements about Prevagen were both truthful and fully substantiated." Dkt. No. 22 at p. 1. Plaintiffs argue that the Court should not consider the Study because it "is extrinsic evidence that cannot be considered in a Rule 12(b)(6) Motion." Dkt. No. 24 at p. 14. The Court agrees.

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, --- F.3d ----, 2019 WL 4458378, at *4 (5th Cir. Sept. 18, 2019); *see also Lone Star Fund*, 594 F.3d 383, 387 (5th Cir. 2010). "When a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims, however, the court can also properly consider those documents." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *see also Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

In this case, Plaintiffs neither referred to the Study in their First Amended Complaint ("FAC") nor attached the Study to their FAC. *See Tostado v. Citibank (S. Dakota), N.A.*, 2009 WL 4598030, at *1 (W.D. Tex. Dec. 3, 2009) (finding Defendant's attached evidence was outside of the pleadings where Plaintiff did not cite the specific document attached). Nevertheless, Defendant argues that the Court should consider the Study in this Motion to Dismiss because Plaintiffs mentioned the Study in their Original Complaint. "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and

adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Accordingly, Plaintiffs' FAC replaced the Original Complaint "for all purposes, including [Defendant's] right to assert defenses by a motion pursuant to Federal Civil Procedure Rule 12." *Barefield Workplace Sols., Inc. v. Miller's of Columbia, Inc.*, 2018 WL 4761254, at *6 (S.D. Miss. Sept. 30, 2018).

Defendant argues that the Study is integral to Plaintiffs' FAC because the Study was referred to in some of Defendant's advertisements attached to the Plaintiffs' FAC. While the *advertisements* are clearly integral to Plaintiffs' claims, Defendant has failed to show how a reference to a Study administered by the Defendant in one of its own advertisements is central to Plaintiffs' claims in this case. While the Study may be central to Defendant's defense of Plaintiffs' claims in this case, it is not central to Plaintiffs' claims.

Based on the foregoing, the Court finds that the Study was neither "referenced in the complaint" nor "central to the plaintiff's claims" in this case. *Inclusive Cmtys.*, 920 F.3d at 900; *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 340 (5th Cir. 2008) ("[B]ecause our review is limited to his complaint and its proper attachments, we may not consider any additional evidence or pleadings.").

Defendant also argues that the Court should take judicial notice of the Study because it contends that it is a "publicly available" document posted on Defendant's website. Dkt. No. 22 at p. 3 n.2. "In deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that when ruling on a Rule 12(b)(6) motion, a court may consider "matters of which a court may take judicial notice").

For purposes of what properly may be considered on a motion to dismiss, courts have defined matters of public record to include court proceedings and rulings, including criminal case dispositions such as convictions or mistrials, decisions of governmental agencies, and published reports of administrative agencies. *See In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019). "For purposes of a motion to dismiss, however, matters of public record do not include all documents which *may* be accessible to the public." *In re Rockefeller Ctr. Props., Inc., Secs. Litig.*, 184 F.3d 280, 293-94 (3d Cir. 1999) (emphasis added). In addition, public records are typically "government−provided records" and "a commercial website is not a public record." *HomeStar Prop. Sols., LLC v. Safeguard Props., LLC*, 2015 WL 13731341, at *5 (D. Minn. Dec. 3, 2015), *report and recommendation adopted in part, rejected in part on other grounds*, 2016 WL 526213 (D. Minn. Feb. 9, 2016). Further, "a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 695 (6th Cir. 2005).

The Court finds that the results of a private corporation's study on a supplement produced by that company and posted on that company's website is not a matter of public record. *See, e.g.*, *Yamada v. Nobel Biocare Holding AG*, 2011 WL 13128155, at *1 n.1 (C.D. Cal. Jan. 20, 2011) (denying plaintiff's request to take judicial notice of a search result for a study in the defendant's database which indicated that dental implant had a 10% failure rate within the first year after implantation since search was not a public record); *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 2017 WL 1001602, at *3 (W.D. Pa. Mar. 15, 2017) (refusing to consider harassment policies because they were not referred to in or attached to the proposed amended complaint and were not within the definition of public records for motion to dismiss stage), *aff'd*, 742 F. App'x 628 (3d Cir. 2018).

Nor is the Study admissible under Rule 201(b) of the Federal Rules of Evidence. Under Rule 201(b), courts are permitted to take judicial notice of facts that are "not subject to reasonable dispute," because they are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *see also Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). The Study fails to satisfy either requirement. Accordingly, the Court will not consider the Study in ruling on the Motion to Dismiss.

Even if the Court did consider the Study in ruling on the Motion to Dismiss, it would not find that the Study precludes all of Plaintiffs' claims in this case, as Defendant argues. While Defendant claims that the Study conclusively proves that its advertisements regarding Prevagen are accurate, Plaintiffs argue the opposite and claim that the Study is unreliable and does not support Defendant's claims regarding Prevagen. *See* Dkt. No. 24 at p. 17. Thus, the reliability of the Study is a disputed issue of fact and therefore not appropriate for determination in a Rule 12(b)(6) motion to dismiss. Accordingly, Defendant's argument that all of Plaintiffs' claims should be dismissed based on the Study is meritless.

**B. DTPA Claim**

The Court now addresses Defendant's alternative argument that Plaintiffs have failed to state plausible claims for relief in this case. Plaintiffs allege that Defendant's statements in its advertisements of Prevagen violate the Texas DTPA, TEX. BUS. & COM. CODE §§ 17.41, 17.45, and 17.46. Under Texas law, the elements of a DTPA claim are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages." *Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) (West 2005)). Defendant argues that Plaintiffs' claim does not satisfy the second DTPA prong because the Study

8

"demonstrates Quincy's claims to be true and Plaintiffs' allegations about them to be false." Dkt. No. 22. As detailed above, this argument fails because the Court cannot rely on extrinsic evidence when considering a motion to dismiss and the reliability of the Study is a fact issue inappropriate to consider at this stage.

Defendant also contends that Plaintiffs have failed to plead their DTPA claims with sufficient particularity, as required by FED. R. CIV. P. 9(b). Federal courts have consistently held that claims under the DTPA must also satisfy Rule 9(b)'s particularity requirement. *E.g., Gonzalez v. State Farm Lloyds*, 326 F. Supp. 3d 346, 350 (S.D. Tex. 2017); *SHS Inv. v. Nationwide Mut. Ins. Co.*, 798 F. Supp. 2d 811, 815 (S.D. Tex. 2011). At minimum, allegations must include the time, place, and contents of the alleged false representations, as well as the identity of the person making the misrepresentation and what was fraudulently obtained. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003). In other words, a plaintiff must set forth the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997).

The Court finds that Plaintiffs have pled the "who, what, when, where, and how" of their DTPA claim. Specifically, Plaintiffs' FAC alleges that Defendant made false and misleading statements regarding Prevagen in television commercials, on Prevagen's packaging, and on its bottle label. Dkt. No. 14 at ¶¶ 44, 46, and 48. Plaintiffs also sufficiently detailed the alleged false and misleading statements made by Defendant: Prevagen improves memory; supports healthy brain function, sharper mind, and clearer thinking; and has been clinically shown to improve memory within 90 days. *Id.* Plaintiffs' FAC states when and where they were exposed to the alleged false and misleading statements, and they allege how the statements were false. Plaintiffs allege that Prevagen cannot do what Defendant claims because it is fully digested and cannot affect the brain.

9

*Id.* at ¶¶ 27-33. The Court finds that Plaintiffs' allegations satisfy Rule 9(b)'s pleading requirements.

In *Racies*, the Northern District of California also found that the plaintiff alleged sufficient facts to state a claim against Defendant for its alleged false and misleading statements regarding Prevagen. The district court reasoned that "[i]f Plaintiff successfully proves that the apoaequorin in the Product is destroyed by the human digestive system or is of such a trivial amount that it cannot biologically affect memory or support brain function, he will be able to affirmatively prove the falsity of Defendant's Product claims." *Racies*, 2015 WL 2398268, at *4. The Court also found that "Defendant's argument that Plaintiff 'offers no support' for his body chemistry allegations and 'fails to cite even a solitary study or test supporting the alleged principles,' must be left to later stages of the litigation in which the strength of the evidence is an appropriate consideration." *Id*. (internal citation omitted); *see also TC*, 753 F. App'x at 89 (holding that "the FTC and New York have made plausible allegations that Quincy's marketing campaign for Prevagen contained deceptive representations, and the district court erred in dismissing the Complaint in its entirety").

As in the above two cases, the Court finds that Plaintiffs have pled their claims "with sufficient specificity to give Defendant notice of the theory of misconduct it must defend against, and no more is required at this stage." *Racies*, 2015 WL 2398268, at *4; s*ee also, e.g.*, *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543–44 (S.D.N.Y. 2013) (denying motion to dismiss where plaintiffs alleged that "it is medically impossible" for the active ingredients in defendant's product to "rebuild cartilage" as claimed); *Murray v. Elations Co.*, 2014 WL 3849911, at *8 (S.D. Cal. Aug. 4, 2014) (denying motion to dismiss where plaintiff alleged that study concluding that "adult cartilage cannot be regenerated" demonstrates the falsity of defendant's claim that its product

"renews joint cartilage"). Accordingly, the undersigned recommends that Defendant's Motion to Dismiss Plaintiffs' DTPA claim be denied.

**C. Breach of Express Warranty Claim**

Under Texas law, a claim for breach of express warranty sounds in contract, not in tort. *See Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60-62 (Tex. 2008). Thus, the heightened pleading standards of Rule 9(b) do not apply to such claims. *See Schouest v. Medtronic, Inc.*, 13 F. Supp. 3d 692, 709 (S.D. Tex. 2014) (finding that breach of express warranty claim was not subject to Rule 9(b)).

Plaintiffs allege a breach of express warranty claim pursuant to TEX. BUS. & COM. CODE § 2.313, which provides in part that:

> (a) Express warranties by the seller are created as follows:
>
>   (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
>   (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

To succeed on a breach of express warranty claim, the plaintiff must prove: (1) an affirmation or promise made by the seller to the buyer; (2) that such affirmation or promise was part of the basis for the bargain, e.g. that the buyer relied on such affirmation or promise in making the purchase; (3) that the goods failed to comply with the affirmation or promise; (4) that there was financial injury; and (5) that the failure to comply was the proximate cause of the financial injury to the buyer. *Lindemann v. Eli Lilly and Co.*, 816 F.2d 199, 202 (5th Cir. 1987) (citations omitted).

Plaintiffs' allegations in the FAC satisfy all of these elements. Specifically, Plaintiffs allege that Defendant breached multiple express warranties by claiming that Prevagen improves memory within 90 days, improves brain functioning, is clinically tested, and supports healthy brain

11

function, a sharper mind, and clearer thinking, when it does none of those things and does not conform to the promises made by Defendant or Defendant's description. Dkt. No. 14 at ¶ 66. Plaintiffs further allege that "[t]he representations made by Defendant were the basis and reason why Plaintiff and the Texas Class purchased Prevagen," and that they have suffered economic harm as a result as a result of "Defendant's illegal conduct." *Id.* at ¶¶ 67, 69.The only argument that Defendant has made with regard to the Plaintiffs' breach of express warranty claim is that the Study precludes the claim. As stated above, this argument fails.

**D. Breach of Implied Warranty Claim**

Plaintiffs also allege a breach of implied warranty claim under Texas Business & Commerce Code § 2.314, which states in part:

> (a) Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .
> (b) Goods to be merchantable must be at least such as
> . . .
> (6) conform to the promises or affirmations of fact made on the container or label if any.

To state a plausible claim for breach of the implied warranty of merchantability, a plaintiff must plead facts showing that: (1) the merchant sold goods to the plaintiff; (2) the goods were unmerchantable and "unfit for the ordinary purposes;" (3) the plaintiff notified the defendant of the breach; and (4) the plaintiff suffered injury. *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 816 (S.D. Tex. 2013) (citing *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667–68 (Tex. 1999)).

Here, Plaintiffs allege that the label on the packaging and bottle of Prevagen state, among other things, that it "improves memory" and is "clinically tested." Dkt No. 14 at ¶¶ 74-75. Plaintiffs

allege that these statements were false and that "Prevagen does not conform to the promises and affirmations on its container and label." *Id.* at ¶ 76. Plaintiffs further allege that they notified Defendant of the breach, and that they have suffered injury. *Id.* at ¶¶ 77-78.

Like Plaintiffs' breach of express warranty claim, the sole argument made by Defendant against this claim is that the statements made by Defendant are true as evidenced in the Study. Again, Defendant's argument is without merit. Accordingly, Plaintiffs have stated a plausible claim of breach of implied warranty under Texas law.

### E. Magnusson-Moss Warranty Act Claim

The Magnuson-Moss Warranty Act confers federal question jurisdiction over breach of warranty claims where the amount in controversy exceeds $50,000, exclusive of interest and costs. 15 U.S.C. § 2310(d)(3); *see also Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014). Defendant's sole argument against Plaintiffs' claim under the Magnusson-Moss Warranty Act is that it fails because Plaintiffs' state law claims fail. Because Plaintiffs' state warranty claims do not fail, this argument is without merit.

### F. Lack of Substantiation Claim

Defendant argues that Plaintiffs cannot bring a lack of substantiation claim in this case because only the government can bring such claims. *See Fulton v. Hecht*, 580 F.2d 1243, 1248 n.2 (5th Cir. 1978) ("[T]here is no private cause of action for violation of the FTC Act."); *Robinson v. J.M. Smucker Co.,* 2019 WL 2029069, at *5 (N.D. Cal. May 8, 2019) ("Under California law, there is no private right of action for claims that advertising lacks scientific substantiation.") (citing *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1094–96 (9th Cir. 2017)). However, as Plaintiffs clarify in their Response, Plaintiffs' FAC does not raise a lack of substantiation claim in this case; nor are they attempting to bring a claim under the FTC Act. *See* Dkt. No. 24 at p. 22. Accordingly, this argument is also without merit. *See Robinson*, 2019 WL 2029069, at *5 (finding that plaintiff had

not pled a lack of substantiation claim where "Plaintiff's claim is not that Defendant has failed to substantiate that Crisco EVOO is 100% extra virgin olive oil—rather, she is claiming that her laboratory tests affirmatively demonstrate that Crisco EVOO is not 100% extra virgin olive oil").

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant Quincy Bioscience, LLC's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint (Dkt. No. 22).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 8, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE